IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                                              4:17-cr-651-4

MELISA DOMINGUEZ (4)

## REPLY TO THE GOVERNMENT'S RESPONSE TO THE APPEAL FROM DETENTION ORDER

The defendant, Melisa Dominguez, through her attorney, Andres Sanchez, files this reply to the Government's response to an appeal of the Magistrate Judge's detention order (Docket Entry No. 168). Somewhat tellingly, the Government seems to abandon the evidence it introduced at the detention hearing when arguing for the continuing detention of Ms. Dominguez. Instead, the Government relies heavily on evidence that the defense has yet to have an opportunity to challenge. And in some case, the Government cites evidence the defense has not yet even had an opportunity to review as the Government, over two years after the indictment, has failed to turn over.

In the original appeal, Ms. Dominguez was essentially raising two issues:

1. Respectfully requesting that the Court re-evaluate whether the rebuttable presumption should have applied to Ms. Dominguez, believing that it should not apply to her, and therefore arguing that the detention analysis should change; and

2. Pointing out that the evidence regarding whether Ms. Dominguez knew about prostitution was thin, at best, from a review of the record.

In response to these two points, the Government has decided to go well beyond any record and make a plethora of statements as if they are a given fact, much of it not relevant to the issues raised or even related to Ms. Dominguez. Hopefully this throw-a-bunch-of-stuff-

against-the-wall-and-hope-something-sticks approach is not a preview of what the Government intends to do at the trial of this matter. The defense hopes that it will not have to defend against accusations not found in the indictment, such as that Ms. Dominguez, a United States citizen, is guilty of illegal re-entry because her husband was previously deported.[1]

### *Rebuttable presumption*

Confusingly, in its response (pg. 14), the Government states "[i]mportantly, and overlooked by Defendant in her motion, is the fact that 18 U.S.C. § 1594, and not just 18 U.S.C. § 1591, is an offense for which the rebuttable presumption applies." The appeal clearly stated on page 4 that "[t]he only count against Ms. Dominguez in the indictment that creates a rebuttable presumption that she is a danger, or a risk of flight is count one [which charges a violation of 18 U.S.C. § 1594]." In the same section of its response, the Government includes what it claims to be a jury instruction for a violation of 18 U.S.C. § 1594, despite it actually being a modified version of the pattern jury instruction for 18 U.S.C. § 371.

What the defense is challenging is how much evidence the Government provided at the detention hearing to link Ms. Dominguez to count one. The appeal pointed out that, in the detention hearing, the Government did not tie Ms. Dominguez in *any* way to the five

---

[1] See Response, Section F., Page 9-10. Despite having represented nearly 300 defendants charged with illegal re-entry, undersigned counsel has yet to encounter a situation where the Government has accused a citizen family member of committing illegal re-entry.

2

persons listed in count one. Despite going way beyond the record in its response, the Government *still* does not attempt to do so.

The Government makes an argument that Ms. Dominguez can be guilty of sex trafficking (just in general, not specifically any of the persons named in the indictment) even if she herself did not use force, threats, fraud or coercion.[2] The defense has not, and does not, challenge this assertion. Instead, the defense argued that Ms. Dominguez cannot be found guilty of conspiring to use force, threats, fraud, or coercion of a specific group of persons without ever providing a link between her and that group of persons. The Government does not appear to challenge the defense's position on this. Even under its modified jury instructions that it deceptively tries to pass off as instructions specifically written for 18 U.S.C. § 1594, the instructions still require that the Government prove up the agreement "as charged in the indictment[.]"

Going one step further, even if a link were to be established, the Government would still need to show that Ms. Dominguez knew force, threats, fraud, or coercion was being used by others before it could establish that she joined a conspiracy to do so. While the Government was not in anyway shy about going well beyond the record, it failed to even argue that it could show any such knowledge on the part of Ms. Dominguez.

---

[2] See page 18 of the Response: "Defendant's apparent belief that the evidence is 'thin' because she did not further commit acts of violence against her only establishes his [sic] failure to comprehend the elements of the crime with which he [sic] is charged."

3

### *Evidence of Involvement in Prostitution*

Instead of relying on the evidence that the Government introduced at the detention hearing, in its response, the Government now raises a new claim that Ms. Dominguez spoke with another defendant on a recorded call about prostitution. Undersigned counsel has requested a copy of this recording on multiple occasions, dating back to last summer. Despite the fact that this call was to have taken place in April of 2017, the Government has yet to turn it over. It is counsel's understanding that the Government played the call for prior counsel. Prior counsel noted that the term "prostitute" or similar was never used. And while the Government has made an argument that one could imply the discussion was about prostitution on the call, that is up for debate. But again, undersigned counsel has not yet had an opportunity to even review the call.[3]

### *Other Matters Raised in the Government's Response*

- "*Defendant fled to Mexico with co-Defendant Cervantes upon learning about the arrest warrants.*" & "*Moreover, after the indictment was filed and arrest warrants were issued, Defendant fled to Mexico with Cervantes and assisted him in evading arrest.*" (Pg. 10) This description is light years away from what the Government presented at the detention hearing. (Docket Entry No. 376, p. 29). Further, at the detention hearing, prior counsel, who was involved with the facts and was essentially a witness, made clear that Ms.

---

[3] One would think that the Government would want to quickly turn over evidence that it believes supports an argument that the "Defendant was the conduit by which many of the victims were brought to Houston from Mexico and she was recorded discussing their work as prostitutes in Court authorized intercepts." Response, Page 18.

Dominguez did not flee to Mexico. See page 131 – "She didn't run over to Mexico after she got the phone call." With the relevant witnesses in the room, the Government could have easily challenged this statement. The bottom line is that within a few days of learning of the fact that she was indicted, Ms. Dominguez met agents at the border. No one appears to dispute that. The Government, for the first time in its response, now adds that Ms. Dominguez helped her husband flee. Nothing in the record supports such an argument.

- "During the arrests and searches, seven more illegal alien prostitutes were found at Defendant's brothel at the Carriage Way Apartment Complex." (Pg. 10). Ms. Dominguez never had a "brothel" at an apartment complex. It is hard to understand where the Government is supporting this assertion.

- Guideline calculations – The defense challenges all the enhancements that the Government takes as a given. Not only did none of the facts to support those enhancements arise in the detention hearing, the defense believes that very few would be credibly argued at sentencing based on the discovery provided. As an example, Ms. Dominguez had nothing to do with medicating one of the persons harbored in another defendant's home, or that she was even aware that this was happening. And the only link to the watermelon incident was a phone call a month before persons were placed in the watermelon truck. She had no involvement with that event. Additionally, it very well could be that the defendant is eligible for credit for acceptance of

responsibility, as she may not challenge the fact that she should be held responsible for harboring. The defense believes that it is likely that the Court will find Ms. Dominguez allowed persons to stay in her double wide trailer home soon after they crossed the border illegally. That she had an open-door policy and that she provided them a warm and safe place to stay until they moved on. The defense believes that it will be clear that Ms. Dominguez, while working with others, was far from a leader or an organizer. Finally, the defense believes that the advisory guideline range will be well below three years in this case.

If the Government can continue to delay the trial in this matter by failing to turn over discovery that was obtained nearly three years earlier, Ms. Dominguez respectfully requests that the Court re-evaluate the need for her continued detention.

Respectfully Submitted,

/s/ M. Andres Sanchez-Ross
M. Andres Sanchez-Ross
PARKER & SANCHEZ, PLLC
700 Louisiana St., Ste. 2700
Houston, Texas 77002
(713) 659-7200

**CERTIFICATE OF SERVICE**

On the day of filing a true and correct copy of this filing was served on the all attorneys of record in this matter through the ECF system.

/s/ M. Andres Sanchez-Ross
M. Andres Sanchez-Ross